IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,                                 09cv0583

                                         **ELECTRONICALLY FILED**

      v.

0.28 ACRE OF LAND, MORE OR LESS,
SITUATE IN WASHINGTON COUNTY,
COMMONWEALTH OF PENNSYLVANIA,
AND PENNSYLVANIA LINES LLC ET AL.,

      Defendant.

**ORDER OF COURT RE: PLAINTIFF'S MOTION TO STRIKE
DEFENDANT'S OBJECTIONS AND AFFIRMATIVE DEFENSES OR,
IN THE ALTERNATIVE, MOTION FOR JUDGMENT
ON THE PLEADINGS (DOC. NO. 14)**

**I.    Introduction**

On May 13, 2009, plaintiff, the United States of America ("the government"), filed a Complaint in Condemnation (Doc. No. 1) in the United States District Court for the Western District of Pennsylvania against 0.28 acres of land located in Washington County, Pennsylvania and the purported owner of the land, Pennsylvania Lines LLC. The United States Army Corps of Engineers sought to obtain a perpetual and assignable easement and right of-way in, on, over and across the land, claiming authority "under and in accordance with the Act of Congress as codified in 40 U.S.C. §3113 and §3114, the Water Resources Development Act of 1992, §1010 (18) of Public Law §102-580, October 31, 1992, which authorizes the Lower Monongahela River Navigation Project and the Consolidated Security, Disaster Assistance and Continuing Appropriations Act, 2009, Public Law §110-329, Division A, September 30, 2008, which made funds available for such purposes." Complaint, Schedule A, (Doc. No. 1-3). The government

identifies the "public uses" for the condemnation as being  "necessary for the construction of the Lower Monongahela River Navigation Project and other uses as may be authorized by Congress or by Executive Order."  Id.

On May 15, 2009, another member of this Court granted the government's Ex Parte Motion for Delivery of Possession (Doc. No. 3) and permitted it to place $2,000 with the Clerk of Court to deposit into the Registry of the Court as just compensation.  Order of Court, May 15, 2009 (Doc. No. 7).  Thereafter, Norfolk Southern Railway Company ("Norfolk Southern"), as successor in interest to the property in question, filed an Answer Presenting Defenses and Objections Under F.R.C.P. 71.1(e). (Doc. No. 11).[1]

Norfolk Southern filed its Answer on July 10, 2009, which makes the following five objections to the taking: the subject taking is "not 'necessary'" to accomplish the Lower Monongahela Project (Doc. No. 11, ¶ 3); the use of an at grade crossing, over and across an active railroad, is "an unnecessary and unsafe activity, which unreasonably interferes with the safe use of Defendant's railroad" (Id., ¶ 4); the taking of a permanent easement is overly broad and unnecessary, when a temporary easement would suffice (Id., ¶ 5); because the property is subject to a private crossing by a deed restriction Norfolk Southern believes is held by a third party, the United States failed to join an indispensable party to this action (Id., ¶ 6); and the taking is "unreasonably dangerous to users of the crossing, to the railroad, and to the public, in the absence of any articulated safety precautions at said crossing." (Id., ¶ 7).

---

[1]Although the Complaint in Condemnation named Pennsylvania Lines LLC as the defendant, Norfolk Southern Railway Company states that it "took title to all properties formerly owned by Pennsylvania Lines LLC on August 27, 2004, by way of merger."  Because the interest of Pennsylvania Lines LLC was transferred, this action may be continued against the original party unless the Court orders substitution of the transferee.  See Fed. R. Civ. P. 25(c).

Norfolk Southern also asserts two affirmative defenses: the offered compensation is "woefully inadequate for the property condemned" (Id., ¶ 8); and, if the taking is permitted, the United States should be required to "maintain and upgrade said crossing, and to install additional safety precautions, including, but not limited to, gates and flashers, all at their [sic] own expense." (Id., ¶ 9).

The United States thereafter filed a Motion to Strike Defendant's Objections and Affirmative Defenses, or in the Alternative, Motion for Judgment on the Pleadings (Doc. No. 14) on September 16, 2009. After consideration of this motion, Norfolk Southern's Response and Brief in Opposition, and the United States' Reply Brief, the Court will grant the motion in part and deny in part.

## II.     Plaintiff's Rule 12(f) Motion to Strike Is Untimely

### A.     Rule 12(f) Standard of Review

Fed.R.Civ.P. 12(f) of the Federal Rules of Civil Procedure provides that, the "court may strike from a pleading any insufficient defenses or any redundant, immaterial, [or] impertinent . . . matter." Rule 12(f) allows the Court to ensure that spurious issues will not pollute the trial. In the present case, though the plaintiff has made a Rule 12(f) motion, the Court may also properly consider a motion to strike on its own initiative. See *United States v. Lot 65 Pine Meadow*, 976 F.2d 1155, 1157 (8th Cir. 1992). Motions to Strike are generally disfavored. *In re Chambers Dev. Sec. Litig.*, 848 F. Supp. 602, 622 (W.D. Pa. 1994). Courts are generally reluctant to deny a party's claims or defenses and have declined to strike matters in pleadings absent clear immateriality or prejudice to the moving party. Id. at 622.

**B.     Discussion**

Plaintiff argues Norfolk Southern's objections are untenable as a matter of law, and that its affirmative defense that the just compensation is woefully inadequate "simply raises a triable issue." Brief in Support of Judg. on the Pleadings, (Doc. No. 15, 12). Further, that the second affirmative defense which seeks to require the United States to maintain and improve the property, "is without merit because the United States' taking is limited to the right to use the crossing." Motion to Strike Defendant's Objections, (Doc. No. 14, 3). Plaintiff argues that under the Anti-Deficiency Act, 31 U.S.C. §1341(a), the taking cannot require the United States to expend funds for maintenance and upgrades.

This Court need not closely examine the arguments for a Rule 12(f) Motion to Strike as it is untimely. Rule 12(f) motions "shall be filed within 20 days of the opposing party's answer." F.R.C.P. 12(f)(2). Norfolk Southern filed its Answer Presenting Defenses and Objections Under F.R.C.P. 71.1(e) on July 10, 2009. However, plaintiff's motion was not filed until September 16, 2009, 49 days after the appropriate filing period expired. Plaintiff does not offer good cause why it did not file its motion to strike in a timely fashion. Therefore, this Court will deny the government's Rule 12(f) motion as untimely.

**III. Plaintiff's Rule 12(c) Motion for Judgment on the Pleadings**

**A.     Standard of Review**

A Motion for Judgment on the Pleadings [2] as to a defendant's defenses under Fed.R.Civ.P. 12(c) is considered using the same standards as when considering a motion to

---

[2] Unlike the Motion to Strike, there is no 20 day time limitation within which to file a Motion for Judgment on the Pleadings.

dismiss claims under Rule 12(b)(6).  *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986).  In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S.544 (2007), a complaint (or in this case, defenses) may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 550 U.S. at 570).  While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* and most recently, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 2009 WL 1361536 (May 18, 2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1950.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Marangos v. Swett*, 2009 WL 1803264, *2 (3d Cir. 2009), citing *Iqbal*, 129 S.Ct. 1937, 2009 WL 1361536, *12.  The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Swett*, quoting *Iqbal.*  While well pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Swett*, quoting *Iqbal*, at §13.  "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, quoting Fed. R.Civ. P. 8(a)(2).

In order to satisfy the requirement of Fed. R. Civ. P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Iqbal*, at 1951.  It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The question is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007).  Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir. 1997).  A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224).  However, this standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable

6

expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civil Action No. 08-411, 2008 U.S. Dist. LEXIS 57988, at § 7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

>   B.   **Objections that Taking is Unnecessary, Unsafe, Overly Broad, Unreasonable, and Arbitrary**

This Court finds that the government has shown that Norfolk Southern's objections are not facially plausible given the highly circumscribed nature of judicial review of government takings, and will grant the government's Motion for Judgment on the Pleadings as to these objections.

The 5th Amendment of the United States Constitution provides "nor shall private property be taken for public use without just compensation." U.S. CONST. Amend. V.  The United States Supreme Court has refused to define "public use",  instead deferring to legislative determinations. *Kelo v. City of New London*, 545 U.S. 469, 483 (2005)  ("Our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power.").

The United States Supreme Court in *Kelo* held that a city redevelopment plan designed to capitalize on the arrival of a new private commercial facility did not violate the "public purpose" requirement of the 5th Amendment. Id. at 474.  The Court refused to examine individual objections to condemnation and instead resolved the challenges, "not on a piecemeal basis, but rather in light of the entire plan."  Id. at 484.  The majority held that "the city's determination that the area at issue was sufficiently distressed to justify a program of economic rejuvenation is

entitled to deference." Id. at 469.  New London based its authority for the condemnations on the city council's authorization for the New London Development Commission as its development agent in charge of implementation.  Id. at 475.  The Court in *Kelo* did not specifically define "public purpose", noting that "public purpose" is applied  "without exception, . . . broadly, reflecting longstanding policy of judicial deference to legislative judgments in this field." Id. at 480.  The Court examined the whole development scheme and determined that in line with the Court's broad definition of "public purpose" and the city's statutory authority for the redevelopment plan, " the plan unquestionably serves a public purpose" and the takings challenged satisfied the Fifth Amendment." Id. at 470.

      The emphasis on statutory authority in *Kelo* leaves few issues to be determined by this Court.  Judicial inquiry "is concluded once we establish the requisite statutory authority and the propriety of the public use." *United States v. 67.59 Acre*, 415 F. Supp. 544, 547 (M.D. Pa. 1976).  Courts must determine if the requisite statutory authority exists to authorize condemnations, and if the statute covers the contested condemnation.  *Berman v. Parker*, 348 U.S. 26, 33 (1954).  This Court will not closely examine the authority's purpose as "the Congress and its authorized agencies have made determinations that take into account a wide variety of values.  It is not for us to reappraise them." Id. at 33.  Therefore, alleged arbitrariness, reasonableness, and necessity is not determined by the court.  The Court only determines the requisite statutory authority and the propriety of the public purpose, which is established by statutory authority and determined by the regulatory body applying the statute.

      Judicial review in land condemnation cases is limited to a determination of statutory authority exercised by a regulatory authority. *Kelo*, 545 U.S. at 470.  Courts have emphasized

that other determinations such as the need for and the amount of land "rests in the discretion of the legislative branch, and the agency authorized by the legislature to do the taking may do so to the full extent of its statutory authority." *67.59 Acres*, 415 F. Supp. at 548. The landowner in *67.59 Acres* argued that the Congressional authority for the flood control project did not include the land subject to be taken. However, the landowner's argument failed once the statutory authority for the project was established because the Secretary of the Army, who was delegated the authority to carry out the flood control project, could determine the size and amount of land necessary for the project even absent specific written authority. Id. at 549. Similarly, landowner's objections to the necessity of a condemnation failed because "inquiry is concluded once we establish the requisite statutory authority and the proprietary of the public purpose of such acquisitions. . ." *United States v. 187.40 Acres of Land*, 381 F. Supp. 54, 57 (M.D. Pa. 1974).

In *United States v. 15.38 Acres*, landowners objected to a taking of a permanent easement by the United States to serve an Air Base arguing that it did not serve a "public use". *United States v. 15.38 Acres of Land*, 61 F. Supp. 937, 938 (D. Del. 1945). The District Court determined that because of Congress' delegation of the power of condemnation to the Secretary of War as seen necessary, the Secretary's "determination of necessity and extent of a particular taking is not subject to judicial re-examination." Id. at 939.

Norfolk Southern argues that "plaintiff's condemnation of a permanent easement over the subject crossing is unreasonable, arbitrary and contrary to public interest, and therefore fails to further a public purpose." Response of Norfolk Southern, (Doc. No. 20). However, these objections fail as a matter of law. The current taking is for "construction of the Lower

Monongahela River Navigation Project and other uses that may be authorized by Congress or by Executive Order." Plaintiff's Complaint, (Doc. No. 1). The Lower Monongahela Project was authorized by the Water Resources Development Act of 1992. (40 U.S.C §3113-3114 (2009)). Once statutory authority is established, the regulatory authority may take within the full extent of its authority. *67.59 Acres*, 415 F. Supp. at 548.

In this case, the government has provided ample statutory authority for the taking. As outlined most recently in *Kelo*, this established statutory authority would preclude this Court from further examinations of reasonableness and necessity. *Kelo*, 545 U.S. at 469. Additionally, the government has supplied reports of engineers involved in the project, which demonstrate that the proposed condemnation is for a public use under the statute. Therefore, none of Norfolk Southern's objections-including the alleged lack of necessity and the extent of the interest taken- are valid defenses. Even under Rule 12(c)'s liberal standard, Norfolk Southern's objections to the condemnation as unnecessary, unsafe, overly broad, unreasonable, arbitrary and contrary to public purpose are not plausible objections to the condemnation, and these objections will be dismissed.

    **C.**    **Affirmative Defenses - Just Compensation and Failure to Join an Indispensable Party**

**Just Compensation**

An affirmative defense based solely on compensation is not a valid objection or defense to condemnation once public use is determined. However, just compensation remains a triable issue for which the defendant will be permitted to offer evidence.

The defendant's second affirmative defense, that if the United States is permitted to

"take the subject crossing, Condemnor should be required to maintain and upgrade said crossing, and to install additional safety precautions. . ." does not affect the determination of "public use", but may also be relevant to the question of just compensation.  Norfolk Southern argues that the government's permanent easement would interfere with its use of the railway and would compromise safety and further, that requiring safety devices would not violate the Anti-Deficiency Act because "such money should be payable out of the same fund and at the same time as the rest of the just compensation due for the taking."  Response of Norfolk Southern, (Doc. No. 20, 6).

Under Rule 12(c), this Court must construe all inferences in the light most favorable to the defendant.  *Umland*, 542 F.3d at 64.  The future "safety precautions" may be found not to violate the Anti-Deficiency Act, if, in fact, the value of such precautions can be reduced to present worth.  At this stage of the proceedings, the proposed safety precautions may impact the issue of compensation.

**Failure to Join an Indispensable Party**

Norfolk Southern's second affirmative defense is that the complaint failed to name a known party with an interest in the property as required under Fed.R.Civ. P. 71.1.  (Doc. No. 20, 9).  Under Rule 12(c) the defendant receives all inferences as the non-moving party.  *Umland*, 542 F.3d at 64.  Norfolk Southern has provided support for this defense, including a deed purporting to show the subject crossing is subject to a deed restriction.  Therefore, an issue of fact exists as to failure to join an indispensable party for which the parties will be allowed to conduct discovery.

**Conclusion**

For the foregoing reasons, plaintiff's Motion to Strike Defendant's Objections and Affirmative Defenses (Doc. No. 14) is DENIED as untimely.

Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 14) is GRANTED in part, as to Norfolk Southern's objections, and DENIED in part as to Norfolk Southern's affirmative defenses.

A separate order will be entered scheduling an initial case management conference.


            SO ORDERED this 25th day of November, 2009

            s/ Arthur J. Schwab
            Arthur J. Schwab
            United States District Judge


cc:  All Registered ECF Counsel and Parties